**ATTACHMENT C**
**SWORN STATEMENT OF SPECIAL AGENT ALBERT KINSEY**
**IN SUPPORT OF SEARCH WARRANT APPLICATION**

Your Affiant, Albert Kinsey, being duly sworn, hereby deposes and states as follows:

1. Your Affiant, Albert Kinsey, is a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and has been employed by HSI as such since April 2001.

2. Your Affiant successfully completed eight weeks of Criminal Investigator Training and 12 weeks of U.S. Customs training at the Federal Law Enforcement Training Center, Glynco, GA. From approximately 2010 through 2017, your Affiant has been a part of the Montana Internet Crimes Against Children (ICAC) task force in Great Falls, Montana. The Montana ICAC is a cooperative effort of members from the Montana Division of Criminal Investigation (DCI), the Federal Bureau of Investigation (FBI), the HSI Montana offices, and state and local agencies whose purpose is to investigate criminal violations of both federal and state child pornography and child exploitation laws. Your Affiant has participated as either lead agent or assisting agent in excess of two hundred (200) child pornography and child exploitation investigations and has been trained in the investigation of computer related child exploitation and child pornography cases. Additionally, Your Affiant has trained other HSI Agents in the investigative techniques necessary to conduct an investigation into the possession, receipt, and distribution of child pornography over the Internet utilizing file sharing sites

3. The statements in this affidavit are based on your affiant's personal observations, training and experience, investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, your Affiant has not included each and every fact known to her concerning this

investigation. Your Affiant has set forth the facts that he believes necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252A(a) are present in the information associated with the Snapchat account IDs: "dirteater212" and "Jazminggg222", maintained by Snapchat, Inc. Your Affiant makes this affidavit in support of an application for a search warrant for content, data and records associated with the above accounts which are stored at premises owned, maintained, controlled, or operated by Snapchat, Inc, located at 63 Market Street, Venice, CA 90291.

4. The information sought and accounts to be searched are described in the following paragraphs and in Attachments A and B. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Snapchat, Inc., to disclose to the government records and other information in its possession pertaining to the subscribers or customers associated with the accounts referenced in this affidavit and further in Attachment A, including the contents of the communications.

5. Your Affiant has probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251(a) and 2252A(a)(2), production, receipt or distribution of child pornography, is located in and within the Snapchat accounts described herein. Your Affiant has reason to believe that the member accounts that are the subject of the instant application will have stored information, data and communications that are relevant to this investigation. This includes, but is not limited to, evidence of the identity of the person maintaining the accounts and other e-mail accounts associated with the Snapchat IDs: "dirteater212" and "Jazminggg222". Thus, as outlined below, and based on your Affiant's training and experience, there is probable cause to believe that evidence, contraband, fruits and/or instrumentalities of the aforementioned crimes are located in these accounts.

## STATUTORY AUTHORITY

6. This investigation concerns alleged violations of the following statutes relating to material involving the sexual exploitation of minors:

a. 18 U.S.C. § 2252A(a)(2) and (b)(1) prohibits a person from knowingly distributing or receiving any child pornography, as defined in 18 U.S.C. §2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or attempting or conspiring to do so.

b. 18 U.S.C § 2251(a) and (e) prohibit any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or if the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or attempting or conspiring to do so.

7. The legal authority for this search warrant application is derived from Title 18, United States Code, chapter 121, §§ 2701-11, entitled "Stored Wire and Electronic Communications and Transactional Records Access." 18 U.S.C. § 2703(c)(A) allows for nationwide service of process of search warrants for the contents of electronic communications. Pursuant to 18 U.S.C. § 2703, as amended by the USA PATRIOT Act, Section 220, a government entity may require a provider of an electronic communication service or a remote computing service to disclose a record or other information pertaining to a subscriber or customer of such service pursuant to a warrant

issued using procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation.

## **DEFINITIONS**

8. The following definitions apply to this Affidavit and its Attachments:

a. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

b. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

c. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

d. The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture,

whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where

    i. the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

    ii. such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

    iii. such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## BACKGROUND REGARDING SNAPCHAT

9. Snapchat is a mobile application made by Snapchat Inc and is available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, videos, and text. Snapchat's differentiating feature from other communications applications is that once a sender is able to set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days the messages are deleted from the company's servers.

10. Snapchat users have the following abilities:

    a. Snaps: A user takes a photo or video using their camera phone in real-time and then selects which of their friends to send the message to. Pictures and videos can also be

sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

b. Stories: A user can add photo or video snaps to their "Story". Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories. Our Stories is a collection of user submitted snaps from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.

c. Memories: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

d. Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

e. Snapcash: Snapchat also offers a money transfer service called Snapcash. Users are

able to transfer up to $2,500 per week using this service. Snapcash transactions are only permitted using Visa and Mastercard debit cards issued by a United States Financial Institution. Money transfers can only occur if the sender and receiver both have Snapchat installed and have linked an appropriate debit card to their accounts. To facilitate these transaction, Snapchat retains retains information about the method and source of payment including debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers.

11. Information that Snapchat possesses and maintains:

   a. Personally Identifying Information: When a user creates an account they make a unique Snapchat username. This is the name visible to other Snapchat users. A user also enters a data of birth. This is supposed to prevent anyone under the age of 13 from using Snapchat. An email address is required to register a Snapchat account. A new user also has to provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code that must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

   b. Usage Information: While a Snapchat message may disappear, the record of who sent it and when still exists. Snapchat records and retains log files and information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of

a snap. Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

c. Device Information: Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.

d. Device Phonebook and Photos: If a user consents, Snapchat can access from their device's electronic phonebook or contacts list and images.

e. Financial information: Snapchat retains information about the method and source of payment of customers who use the Snapcash service. This includes i debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers. Snapcash generate a receipt for any transaction. The receipts are programmed to automatically delete after the sender and recipient have seen the message and swiped out of the Chat screen, unless either taps to save the message. Snapchat maintains transactional records for ten days. These records include information about the sender and receiver, the transaction amount, and date/time stamps of when the message was sent, received, and opened.

  f. Message Content: Snapchat's moto is 'delete is our default.' Snapchat deletes a snap once it has been viewed. If the message is not read, because the user has not opened up the application, the message is stored for 30 days before being deleted. However, just because the snap no longer appear to the user, doesn't necessarily mean they are gone. For example, Snapchat has a feature called Replay. This allows users to view a previously viewed snap once per day. This feature is disabled by default and the user must opt-in to use Reply. Also, if a Snapchat user posts an image or video to the MyStory feature it can be viewed by their friends for 24 hours. If the user posted to the Our Stories feature, the snaps are archived and can be viewed through Snapchat.

12. Therefore, the computers of Snapchat are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and account application.

## BACKGROUND OF CURRENT INVESTIGATION

13. On or about February 1, 2017, Your Affiant was contacted by the United States Air Force (USAF) Office of Special Investigations (OSI), Malmstrom Air Force Base to assist them in an online child exploitation investigation.

14. Specifically, your Affiant learned that on January 29, 2017 through January 31, 2017, a 16 year old juvenile male in Bigfork, Montana located in Flathead County reported that he had been coerced into producing sexually explicit images and videos of himself by a user on Snapchat. The juvenile male turned over his cellular phone to OSI and HSI on February 1, 2017.

15. On or about February 1, 2017, Your Affiant and OSI Special Agent Martin Meeks met with the 16 year old juvenile male (hereafter referred to as JM) in Bigfork, Montana.

16. During the interview, JM stated the following: on January 29, 2017, JM was "friended" by Snapchat user "Jazminggg222" (hereafter referred to as SUSPECT 1). Once the two were acquainted, SUSPECT 1, an adult female who knew JM was under the age of 18 years old, sent JM a nude photo of herself. SUSPECT 1 requested JM send her a nude image in return, to which JM complied.

17. JM stated the conversation between him and SUSPECT 1 turned to his future interest in the U.S. Air Force after high school. SUSPECT 1 informed JM that JM needed to speak with a friend of hers identified as "Raymond" because he was in the Air Force.

18. Approximately 30 minutes after speaking with SUSPECT 1 on January 29, 2017, JM was "friended" by Snapchat user "dirteater212" assigned vanity name "J.F.Kennedy" (hereafter referred to as SUSPECT 2). SUSPECT 2 and JM chatted about the Air Force and the fact that SUSPECT 2 was currently a cop in the Air Force. SUSPECT 2, an adult male, was told by JM that JM was under the age of 18 years old and still in high school. SUSPECT 2 requested images of JM starting with pictures of the chest area and then progressed to the stomach area of JM. JM and SUSPECT 2 exchanged non-nude pictures. SUSPECT 2 then sent JM a nude picture of SUSPECT 2. SUSPECT 2 requested nude images of JM to include pictures of his penis, soft and erect. SUSPECT 2 told JM "we only have to do this once." SUSPECT 2 said he would get the nude image of JM deleted off of his friend's account (SUSPECT 1) due to the fact the nude image of JM could ruin his career in the Air Force. SUSPECT 2 directed JM to take a nude image and sent it to SUSPECT 2 stating "you only have to do this once, this is the only time you have to do this and you don't have to do this ever again."

19. Via Snapchat, JM sent SUSPECT 2 a nude image of himself. JM said he did so because JM feared he could be in trouble for sending the first nude image to SUSPECT 1. JM explained that SUSPECT 2 continued requesting images and videos of JM nude and or masturbating. SUSPECT 2 asked JM if he would be interested in a "three way" with SUSPECT 1.

20. JM stated he was constantly pressured and threatened by SUSPECT 2 into sending multiple pictures and videos of his penis and of JM masturbating.

21. JM became suicidal due to SUSPECT 2 constantly pressuring JM into taking nude pictures or producing sexually explicit videos. SUSPECT 2 attempted to communicate with JM on some occasions every five minutes.

22. JM told SUSPECT 2 he was suicidal to which SUSPECT 2 replied "ok sounds good fine, stop being so dramatic about this it's just a picture and I guess I will just give my phone to them tomorrow." SUSPECT 2 was referencing giving his phone to the police from a previous threat made by SUSPECT 2 when he told JM "I can give my phone to the police and they will see everything we've done, I'm going to report you." SUSPECT 2 told JM "if you can't handle the pictures and videos and stressing out there's no way you can handle the Air Force and you can basically kiss your career goodbye." JM was scared and believed it would affect his career in the Air Force when SUSPECT 2 told JM "your career and your life will be ruined not me, no I'm already getting out."

23. JM continued sending images and videos to SUSPECT 2 as requested until JM eventually told his parents about what was going on. JM disclosed to his parents that JM was suicidal.

24. JM stated he sent SUSPECT 1 one image depicting his penis, and SUSPECT 1 sent at least one image of her vagina.

25. JM stated he sent SUSPECT 2 approximately 15 nude images as directed by SUSPECT 2. JM stated he sent SUSPECT 2 approximately 8 sexually explicit videos depicting JM masturbating. JM said SUSPECT 2 would get mad if the video wasn't a certain length or if it didn't show JM ejaculating on camera. SUSPECT 2 also told JM to moan more on camera. SUSPECT 2 sent JM approximately 20 nude images of himself and approximately 12 videos of SUSPECT 2 masturbating and ejaculating on camera. This continued from January 29, 2017 to January 31, 2017. All the images and videos were sent through Snapchat.

26. Your affiant reviewed the USAF OSI investigation folder with identifying information on SUSPECT 2. SUSPECT 2 was identified as a member of the Security Forces Squadron at Peterson Air Force Base, Colorado Springs, CO. SUSPECT 2 was identified by OSI in September 2015, on a different investigation where SUSPECT 2 was utilizing Snapchat with an alias of a female persona requesting nude pictures of male victims. SUSPECT 2 was identified in May, 2016, in a different investigation in Kalispell, Montana where SUSPECT 2 was soliciting two juvenile males under the age of 18 to send sexually explicit images to SUSPECT 2 via Snapchat. On this previous investigation in Kalispell, Montana, SUSPECT 2 was identified utilizing Snapchat user name "dirteater212".

27. On February 6, 2017, HSI Colorado Springs, CO executed a search and seizure warrant on the residence of SUSPECT 2. Agents seized numerous pieces of electronic media. SUSPECT 2 was interviewed and stated he chatted with a young white male in Montana, via Snapchat, but said the conversation was not sexual in nature.

28. On February 6, 2017, your Affiant sent a preservation letter to Snapchat Inc. requesting the account IDs associated with both SUSPECT 1 and SUSPECT 2 be preserved

pending legal process. Snapchat Inc. assigned a support case number and indicated the accounts of SUSPECT 1 and SUSPECT 2 would be retained for 90 days.

29. Your affiant believes that the person utilizing Snapchat account ID: "dirteater212" and "Jazminggg222" communicated with a child victim (JM) located within the District of Montana and that during these communications, JM produced images and videos of child pornography at SUSPECT 1's and SUSPECT 2's requests. Further, your affiant believes that JM distributed these images and videos via Snapchat.

30. Your Affiant believes, based on training and experience and the facts stated above, there is data and evidence within the Snapchat account ID: "dirteater212" and "Jazminggg222" that will assist law enforcement in investigating this case and in identifying the person(s) who coerced a child located within the District of Montana to produce and distribute images/videos of child pornography.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31. Your Affiant anticipates executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snapchat, Inc., to disclose to the government copies of the records, data and other information (including the content of communications, if available) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

32. Based on your Affiant's training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in control of Snapchat,

Inc., there exists evidence of a crime, contraband and/or fruits of a crime. Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that the Snapchat accounts described in Attachment A will contain evidence of a crime, specifically but not limited to, identification of the person who produced, received, and/or distributed images of child pornography, or attempted or conspired to do so, and additional evidence about that production, distribution and receipt. Accordingly, a search warrant is requested.

33. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(I).

34. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Date this the 22nd day of February, 2017.

_____
Albert Kinsey
HSI Special Agent


SUBSCRIBED and SWORN before me this 22nd day of February, 2017.

_____
Honorable John T. Johnston
United States Magistrate Judge